UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jeffery Scott Freeman, #240894, *a/k/a Jeffery Freeman,* | ) | C/A No. 9:14-3339-DCN-BM |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Larry Cartledge, Perry Corr. Warden, | ) | |
| | ) | |
| Defendant. | ) | |

The Plaintiff, Jeffery Scott Freeman, proceeding pro se and in forma pauperis, brings this action pursuant to 42 U.S.C. § 1983. Plaintiff is an inmate at the Perry Correctional Institution ("PCI"), part of the South Carolina Department of Corrections ("SCDC").

Plaintiff alleges that on February 14, 2013, he was transferred without his personal property from the McCormick Correctional Institution of the SCDC to the Broad River Correctional Institution ("BRCI") of the SCDC. Because he was on "lock up," Plaintiff was not allowed to have or view his property while at BRCI. Plaintiff was then transferred to lock up at PCI on April 4, 2013, at which time his belongs were placed in the property room. Approximately one and one-half months later, Plaintiff was released from lock up, but the property officer could not find Plaintiff's property bag. Complaint, ECF No. 1 at 3. Plaintiff alleges that on a number of occasions he spoke with the Defendant about the missing property and Defendant said he would "get back with" Plaintiff.

Plaintiff claims that the Defendant made an offer to restore privileges to Devodus Rouse ("Rouse"), another inmate who had missing property, but that the Defendant has refused

Plaintiff's request to get the same "deal" as Rouse. Plaintiff further alleges that at a later date, the Defendant again offered Rouse (who had lost his privileges and property again) his privileges back, and that the Defendant also offered a television to Keith Jackson, another inmate who had missing property. Plaintiff also alleges that the Defendant told Plaintiff that when Plaintiff got to PCI on November 21, 2013, Plaintiff signed an inventory sheet (on November 21, 2013) listing the property he had. Plaintiff explained that he arrived at PCI on an earlier date (April 21, 2013) and was on lockup, but Defendant would not listen to him. Id. at 3-4. Plaintiff claims that the Defendant is "not real happy with [Plaintiff] because [Plaintiff] was jumped on here at statewide PC and [Plaintiff's] family has been on the telephone with [their] senators and lawyers and someone ...brought down some heat to Perry CI so [Defendant] was not willing to give [Plaintiff] the same deal he g[a]ve to other inmates." Id. at 5.

Plaintiff also claims that he is missing some legal work, including a transcript which was taken during a "shakedown" of his cell on February 2, 2014. According to the Complaint, "Lt. Peay" allegedly took Plaintiff's post-conviction relief transcript because contraband was found inside it, Plaintiff was again put on lock up, and the transcript was not returned after Plaintiff was released from lock up in July 2014. Plaintiff asserts that the Defendant and other PCI personnel did not respond to his requests to return his property. ECF No. 1 at 5-7. Plaintiff requests monetary damages for his lost personal property and the cost of postage and copying to replace his lost legal work (transcripts). Alternatively, Plaintiff seeks reinstatement of his privileges, suspension of disciplinary detention time, Koss portable headphones, and a Sony radio or reinstatement of his privileges and a television. Id. at 8.

### Discussion

Under established local procedure in this judicial district, a careful review has been made of the pro se Complaint pursuant to the procedural provisions of 28 U.S.C. § 1915 and § 1915A, the Prison Litigation Reform Act, Pub.L. No. 104–134, 110 Stat. 1321 (1996), and in light of the following precedents: Denton v. Hernandez, 504 U.S. 25 (1992), Neitzke v. Williams, 490 U.S. 319 (1989), Haines v. Kerner, 404 U.S. 519 (1972), Nasim v. Warden, Maryland House of Corr., 64 F.3d 951 (4th Cir. 1995), and Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983). Pro se complaints are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a pro se complaint to allow the development of a potentially meritorious case. Hughes v. Rowe, 449 U.S. 5, 9 (1980); Cruz v. Beto, 405 U.S. 319 (1972); Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

However, even when considered pursuant to this liberal standard, for the reasons set forth herein below this case is subject to summary dismissal. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990); see also Ashcroft v. Iqbal, 556 U.S. 662 (2009) [outlining pleading requirements under the Federal Rules of Civil Procedure].

First, the Complaint is subject to summary dismissal because Plaintiff has clearly failed to exhaust his administrative remedies as to the actions alleged to have been committed by the Defendant. Before a prisoner can proceed with a lawsuit in federal court concerning conditions of confinement, he must first exhaust his administrative remedies as required by the Prison Litigation

3

Reform Act, which provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion is required even when a prisoner seeks remedies, such as money damages, that are not available in the administrative proceedings. See Booth v. Churner, 532 U.S. 731, 740–41 (2001). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review, which means "'using all steps that the agency holds out, and doing so properly.'" Woodford v. Ngo, 548 U.S. 81 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)). Thus, "it is the prison's requirements, and not the [Prison Litigation Reform Act], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Further, while a plaintiff's failure to exhaust administrative remedies is considered an affirmative defense, and not a jurisdictional infirmity; id. at 216; if the lack of exhaustion is apparent on the face of the prisoner's complaint, sua sponte dismissal prior to service of the complaint is appropriate. Anderson v. XYZ Corr. Health Servs., Inc., 407 F.3d 674, 683 (4th Cir. 2005).

Here, a plain reading of the Complaint shows that Plaintiff did not properly exhaust his available administrative remedies against that Defendant before filing this lawsuit. Although Plaintiff asserts he filed a grievance in February 2013 concerning the incidents alleged, he also states that he was not transferred to PCI until April 4, 2013, and he did not speak with the Defendant about his missing property until approximately one and one-half months later. Thus, the grievance

4

referenced by the Plaintiff was filed prior to any alleged actions by this Defendant, and could not have concerned claims relating to the Defendant allegedly giving favorable treatment to other inmates or the loss of a transcript in July 2014. While Plaintiff alleges he attempted to file another grievance after he got off lock up (and presumably learned the extent of what property he was missing) to state all of the items he was missing, he states that "Grievance Ms. Hindenburg said I could not put anything else down that it would all go under the grievance pending." ECF No. 1 at 4. However, Plaintiff has not asserted that he filed a grievance concerning the alleged actions by the Defendant or about the loss of a transcript in July 2014 (the same month Plaintiff alleges he received a final response to his grievance).

Additionally, even if the Court decided not to dismiss this case a this time for failure of the Plaintiff to exhaust his available administrative remedies, this Complaint would still be subject to dismissal. To the extent Plaintiff claims that the Defendant negligently or negligently allowed others to deprive him of his personal property, or that he was deprived of his personal property by the unauthorized intentional act of the Defendant, Plaintiff fails to state a cognizable claim of a constitutional violation, as it is well settled that the Due Process Clause is not implicated by a negligent act of a governmental official causing unintended loss of property. See Daniels v. Williams, 474 U.S. 327 (1986); Pink v. Lester, 52 F.3d 73, 75 (4th Cir.1995). Thus, to the extent that Plaintiff is complaining of negligent conduct by the Defendant, he fails to set forth a viable claim under § 1983. See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 200–03 (1989)["[t]he Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation"].



5

Further, even an intentional deprivation of property by a governmental employee, if unauthorized, does not violate the Due Process Clause if a meaningful post-deprivation remedy for the loss is available. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Mora v. City of Gaithersburg, MD, 519 F.3d 216, 230-31 (4th Cir. 2008) [concerning the intentional taking of guns and ammunition from the plaintiff]. This Court can take judicial notice from numerous prior prisoner filings in this Court that South Carolina has an adequate post-deprivation remedy for pursuing a claim for lost property. Cf., also Bogart v. Chapell, 396 F.3d 548, 561-63 (4th Cir. 2005)[finding that intentional destruction of the plaintiff's animals did not violate the due process clause because South Carolina afforded a meaningful post-deprivation remedy for the loss of animals].

To the extent that Plaintiff is attempting to state a claim for violation of his First Amendment right of access to the courts, prison or jail officials deny prisoners their right to "meaningful access to the courts" by depriving them of a "reasonably adequate opportunity" to challenge their sentence or conditions of confinement. See Bounds v. Smith, 430 U.S. 817, 828 (1977); Lewis v. Casey, 518 U.S. 343, 354-55 (1996). The Complaint fails to allege sufficient facts to state a plausible claim under this standard, as a prisoner seeking to assert an access-to-court claim under § 1983 must specifically allege facts that would support a finding that jail or prison officials' conduct inflicted an "actual injury and prejudice" to the inmate; i.e. that their conduct hindered the inmate's efforts to pursue a non-frivolous legal claim. See Magee v. Waters, 810 F.2d 451 (4th Cir.1987) ("Courts have required a showing by a complaining prisoner of actual injury or specific harm to him before a claim of lack of access to the courts will be sustained"). Here, all that Plaintiff has alleged is that his legal work, including court transcripts, has not been returned to him. In order to make out a prima facie case of denial of access to the courts, Plaintiff must identify with



6

specificity an actual injury resulting from official conduct, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. Lewis, 518 U.S. at 353-55; see Cochran v. Morris, 73 F.3d 1310, 1316 (4th Cir. 1996); White v. White, 886 F.2d 721, 723-24 (4th Cir. 1989). Plaintiff's Complaint fails to allege any facts to show how he has been adversely affected due to the loss of his legal work. Therefore, Plaintiff has failed to state a plausible claim that he has been prejudiced in pursuing non-frivolous litigation. Id.

Finally, Plaintiff fails to state a claim for discrimination based on other inmates receiving reinstatement of privileges or receiving a television. An equal protection claim arises when, without adequate justification, similarly-situated persons are treated differently by a governmental entity. U.S. Const. amend XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." Morrison v. Garraghty, 239 F.3d 648, (4th Cir. 2001). When the distinction is based on a "suspect classification" or effects the denial of a fundamental right, the constitutional scrutiny sharpens in focus to determine whether the "classification has been precisely tailored to serve a compelling governmental interest." See Plyler v. Doe, 457 U.S. 202, 216-17 (1982). However, when a plaintiff is not a member of a suspect class, he must prove that the distinction between himself and other inmates was not reasonably related to some legitimate penological purpose. See Turner v. Safley, 482 U.S. 78, 89 (1987). Here, Plaintiff has not asserted that he is a member of a protected class. Further, he fails to allege facts sufficient to show that he and the other inmates (Rouse and Jackson) were similarly situated, or that Defendant's decision to not give him a "deal" was not reasonably related to some legitimate penological purpose. Plaintiff even admits that the Defendant thought



7

(even if he wrongly did so) that Plaintiff had all of his property based on the November 2013 property sheet. Further, Plaintiff fails to state that the decision not to provide him with regular privileges or requested property (such as a television) was not based on some legitimate penological purpose, as he admits he was locked up on a disciplinary infraction for a charge of hoarding medication (see ECF No. 1 at 5).

<b><u>Recommendation</u></b>

Based on the foregoing, it is recommended that the Court dismiss Plaintiff's Complaint without prejudice and without issuance and service of process.

Plaintiff's attention is directed to the important notice on the next page.

Bristow Marchant
United States Magistrate Judge

September 26, 2014
Charleston, South Carolina



8

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

