**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| JEFFERY SCOTT FREEMAN, #240894, <br> *a/k/a Jeffery Freeman*, <br><br> Plaintiff, <br><br> vs. <br><br> LARRY CARTLEDGE, <br> *Warden, Perry Correctional Institution*, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 9:14-cv-3339-DCN <br><br> **ORDER** |

This matter is before the court on United States Magistrate Bristow Marchant's Report and Recommendation ("R&R") that this court summarily dismiss plaintiff Jeffery Scott Freeman's ("Freeman") complaint without prejudice and without service of process. For the reasons set forth below, the court adopts the R&R and summarily dismisses Freeman's complaint without prejudice and without service of process.

## I. BACKGROUND[1]

Freeman, an inmate currently housed at Perry Correctional Institute ("PCI") and proceeding pro se and in forma pauperis, filed this action pursuant to 42 U.S.C. § 1983, alleging that prison officials unlawfully deprived him of his personal property and discriminated against him. Freeman alleges that on February 14, 2013, he was transferred without his personal property from the McCormick Correctional Institution ("MCI") to the Broad River Correctional Institution ("BRCI"). Compl. 3. Because

---

[1] The facts are considered and discussed in the light most favorable to Freeman, the party opposing summary dismissal. See Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).

1

Freeman was in "lock up" for the duration of his stay at BRCI, he claims that he was not permitted to retrieve or even view his property. Id. Inventory reports indicate that Freeman's property arrived at BRCI a week after Freeman was transferred. Id. Thereafter, on April 4, 2013, Freeman was again transferred from BRCI to PCI, at which time Freeman's personal belongings were placed in PCI's property room. Id. Approximately one and a half months later, Freeman was released from lock up. Id. After attempting to retrieve his personal effects, Freeman claims that prison officials were unable to locate his property bag. Id. Freeman claims that he spoke with defendant Larry Cartledge ("Cartledge"), PCI's warden, on numerous occasions but that Cartledge repeatedly stated that he would "get back with" Freeman. Id.

Freeman further claims that other inmates received different treatment under the same circumstances. Id. at 3–4. According to Freeman, Cartledge reinstated the privileges of another inmate, Devodus Rouse ("Rouse"), who also had missing property, while Freeman was refused the "same deal." Id. at 4. Freeman alleges that Cartledge offered a television to Keith Jackson ("Jackson"), another inmate who had missing property, in payment for his lost belongings. Id. Freeman claims that Cartledge was "not really happy with [Freeman] because [Freeman] was jumped on here at statewide PC and [Freeman's] family has been on the telephone with [their] senators and lawyers and someone . . . brought down some heat to Perry CI so [Cartledge] was not willing to give [Freeman] the same deal he [gave] to other inmates." Id. at 5.

Freeman claims that when he finally spoke with Cartledge a month and a half after he arrived at PCI and attempted to list the items missing from his property bag, Cartledge refused to listen, citing an inventory sheet that Freeman had signed on

2

November 21, 2013.  Id. at 4.  Cartledge mistakenly believed that this was the inventory sheet given to Freeman when he first arrived at PCI,[2] and that the inventory sheet did not list any of the items that Freeman claimed were missing.  Id.  Freeman claims that he tried to explain that he arrived at PCI on April 4, 2013 and that he was in lock up, but to no avail.  Id.

Freeman alleges that there were various legal documents included in his missing property that are pertinent to his post-conviction relief claims.  Id. at 5.  Freeman states that during a "shakedown" of his cell on February 2, 2014, prison officials took a transcript from Freeman.  Id. at 7.  According to the complaint, "Lt. Peay" allegedly took Freeman's post-conviction relief transcript because contraband was found inside of it.  Id. at 7.  As a result, Freeman was again placed in lock up.  Id.  The transcript has not been located since the "shakedown."  Id.

According to Freeman, Cartledge and other PCI personnel refused to respond to his requests to return his property.  Id.  Freeman has written numerous requests to staff members[3] and filed a grievance with PCI on August 8, 2014.  Id.  The grievance filed on August 8, 2014, however, was "unprocessed" by PCI officials.  Pl.'s Objections 3.  According to Freeman, PCI officials claim that Freeman requested the grievance to be

---

[2]It is common practice in all correctional institutions to inventory a prisoner upon arrival.  In fact, Freeman states:

> Inmates are supposed to be inventoried when they reach an institution and every time an inmate is locked up on a disciplinary infraction . . . .  The first inventory sheet Perry CI has on any of my property is on November 21, 2013 [,] but [ ] that is not the date I got to Perry CI.

Compl. 5.

[3]On April 9, 2014, Freeman wrote a request to the South Carolina Department of Corrections's General Counsel.  See Pl.'s Objections 16.  On July 11, 2014, Freeman wrote a request to Cartledge.  Id. at 1.  On July 16, 2014, Freeman wrote a request to Ms. Holsinger, Cartledge's assistant.  Id. at 15.  Lastly, on July 27, 2014, Freeman wrote a request to Lt. Peay.  Id. at 5.  Lt. Peay answered Freeman's request, stating that he remembered putting the seized transcript into PCI's property room.  Id.

3

withdrawn. Id. Freeman thereafter filed another grievance requesting PCI officials to reconsider that issue, but the response is still pending. Pl.'s Objections 10.

Freeman requests monetary damages for his lost property and the cost of postage and copying to replace his lost legal documents. Compl. 8. Alternatively, Freeman seeks reinstatement of his privileges, suspension of disciplinary detention time, portable headphones, and a radio, or reinstatement of his privileges and a television. Id.

On September 29, 2014, the magistrate judge issued the pending R&R, which recommended that the case be dismissed without prejudice due to Freeman's failure to exhaust his administrative remedies. Freeman filed objections to the R&R on October 14, 2014. The matter is now ripe for the court's review.

## II.   STANDARD OF REVIEW

### A.  Objections to R&R

The court is charged with conducting a de novo review of any portion of the magistrate judge's report to which specific, written objections are made, and may accept, reject, or modify, in whole or part, the recommendations contained in that report. 28 U.S.C. § 636(b)(1). The magistrate judge's recommendation does not carry presumptive weight, and it is the responsibility of this court to make a final determination. Matthews v. Webber, 423 U.S. 261, 270–71 (1976). A party's failure to object is treated as agreement with the conclusions of the magistrate judge. See Thomas v. Arn, 474 U.S. 140, 150 (1985).

### B.  Summary Dismissal

Title 28 U.S.C. § 1915 permits an indigent litigant to file in forma pauperis, which allows a federal court action to be commenced without prepaying the administrative costs

of proceeding with the lawsuit. However, the statute limits the actions that may be filed by permitting the court to dismiss the case upon finding that the action "fails to state a claim on which relief may be granted" or is "frivolous or malicious." 28 U.S.C. § 1915(e)(2)(B)(i), (ii). A complaint is frivolous when it is "clearly baseless," which includes allegations that are "fanciful" or "delusional." Denton v. Hernandez, 504 U.S. 25, 32–33 (1992) (citing Neitzke v. Williams, 490 U.S. 319, 325, 327–328 (1989)).

### C. Pro Se Plaintiff

This court is required to liberally construe pro se complaints. Erickson v. Pardus, 551 U.S. 89, 94 (2007). Such pro se complaints are held to a less stringent standard than those drafted by attorneys, and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious claim. See Highes v. Rowe, 449 U.S. 5, 9 (1980); see also Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. Erickson, 551 U.S. at 93. Nonetheless, the requirement of liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Soc. Servs., 901 F.2d 387 (1990).

### III.   DISCUSSION

The R&R recommends that this court summarily dismiss Freeman's claims for failure to exhaust his administrative remedies under the PLRA. Freeman objects, arguing that he properly exhausted his administrative remedies.

### A. Exhaustion of Administrative Remedies

The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Additionally, a prisoner must exhaust administrative remedies even when the prisoner seeks remedies, such as money damages, that are not available in administrative proceedings. Booth v. Churner, 532 U.S. 731, 740-41 (2001). The remedies available "need not to meet federal standards, nor must they be 'plain, speedy, and effective.'" Porter, 534 U.S. at 524 (quoting Booth, 532 U.S. at 739). Satisfaction of exhaustion also requires "using all steps that the agency holds out, and doing so properly." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (citing Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). Accordingly, "it is the prison's requirements, and not the [PLRA], that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007).

Pursuant to the SCDC Inmate Grievance Procedure, an inmate seeking to complain of prison conditions must first

> make an effort to informally resolve a grievance by either submitting a Request to Staff Member Form or discussing it with the appropriate staff member. If informal resolution is not possible, the inmate then completes a Form 10-5, also known as a Step 1 Grievance, and submits it to the employee designated by the warden within fifteen days of the alleged incident. If the inmate is not satisfied with the decision, he may appeal to the Division Director of Operations. The appeal is accomplished by completing a SCDC Form 10-5a, also known as a Step 2 Grievance and

> submitting it and the Step 1 Grievance to the Institutional Inmate Grievance Coordinator within five days of the receipt of the response. The responsible official renders a final decision which is SCDC's final response. An inmate who wishes to appeal the decision has thirty days to appeal to the South Carolina Administrative Law Court ("ALC").

McDowell v. Ozmint, No. 12-cv-2799, 2011 WL 2731202, at *2 (D.S.C. Nov. 5, 2011) (citations omitted); see also Malik v. Ward, No. 8:08-cv-1886, at *2 n.4 (D.S.C. Mar. 26, 2010) ("The Court may take judicial notice of the SCDC grievance process.").

Under the PLRA, failure to exhaust administrative remedies is an affirmative defense, and an inmate is not required to plead or demonstrate in his complaint that he has exhausted such administrative remedies. Jones v. Bock, 549 U.S. 199, 216 (2007). Rather, the defendant bears the burden to establish a prisoner's failure to exhaust. Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). A district court is permitted to address the issue of exhaustion sua sponte, however, and may dismiss the complaint without input from defendant if the "failure to exhaust is apparent from the face of the complaint," and the inmate has been provided an opportunity to respond on the exhaustion issue. Anderson, 407 F.3d at 682.

All South Carolina Department of Corrections ("SCDC") facilities, including PCI, follow an identical grievance procedure, which consists of both an informal and a formal component. See SCDC Policy/Procedure, GA-01.12, Inmate Grievance System (2004). Pursuant to SCDC procedure, the informal component must be pursued first and completed before an inmate may initiate the formal component. Id. The informal component, referred to as a "request to staff member," requires an inmate to raise his concerns with a designated SCDC official. Id. If the claim is not resolved through the informal component, the inmate may then pursue the formal component, which requires the inmate to file a formal grievance. Id. Pursuant to the SCDC grievance procedure, an

inmate must pursue his claim through all available levels of appeal to complete the formal component. Id.

Here, Freeman's complaint shows that he did not properly exhaust all available remedies as to Cartledge's alleged actions. During the period of the events giving rise to Freeman's claim, Freeman filed three grievances, all of which will be discussed in turn.[4]

Freeman filed his first grievance concerning misplaced property on February 27, 2013 ("first grievance").[5] In the first grievance, Freeman complained that when he was transferred from BRCI to PCI, his personal property was not transported with him. Pl.'s Objections Ex. A at 3. However, Freeman was not transferred from MCI to BRCI—where Cartledge is the warden—until April 4, 2013. In fact, Freeman filed his first grievance at BRCI, not PCI. Pl.'s Objections 3. Furthermore, Freeman did not speak with Cartledge until approximately one and a half months after being transferred to PCI. Compl. 3. Thus, the first grievance could not have referred to any alleged actions taken by Cartledge. As such, Freeman's February 27, 2013 grievance does not meet the PLRA's exhaustion requirements.[6]

On August 8, 2014, Freeman filed another grievance concerning a February 2, 2014 "shakedown" of his cell and the seizure of his transcript as contraband ("second grievance"). In his second grievance, Freeman complains that after the shakedown,

---

[4] As discussed above, Freeman did file various Staff Requests concerning his property. See Pl.'s Objections Ex. A. However, the Staff Requests are not the proper vehicle by which Freeman must exhaust his administrative remedies under the PLRA.

[5] Although Freeman brings both a discrimination claim and a deprivation of property claim, none of Freeman's grievances mention any alleged discriminatory acts or the other inmates who allegedly received preferential treatment. Therefore, Freeman clearly failed to exhaust his administrative remedies for his discrimination claim. Accordingly, the court will only address Freeman's deprivation of property claim.

[6] Even though prison officials at PCI responded to Freeman's Step 2 grievance on July 21, 2014, the grievance does not relate to actions alleged taken by Cartledge or anything that occurred at PCI because the original Step 1 grievance was filed before Freeman's transfer to PCI. See Pl.'s Objections Ex. A at 4.

various officers took his property, which was never returned. Pl.'s Objections Ex. A at 9. Cartledge's name is never mentioned in the second grievance, nor does the grievance reference his transfer to PCI or Cartledge's alleged failure to return his property.

Further, even if Freeman's second grievance can be construed to refer to Cartledge, Freeman failed to properly comply with the grievance process. Under SCDC procedures, inmates must institute their grievances within fifteen days of the date of the incident giving rise to the complaint. See SCDC Policy/Procedure, GA-01.12, Inmate Grievance System (2004). According to SCDC grievance procedures:

> If informal resolution is not possible, the grievant will complete Form 10-5, Step 1, which is located in common areas, i.e., living areas, libraries, etc. and will submit the Form to an employee designated by the Warden . . . within 15 days of the alleged incident. An inmate will submit a grievance within the time frames established in the policy.

Id. (emphasis added).

The alleged "shakedown" of Freeman's cell and seizure of his legal transcript occurred on February 2, 2014. However, Freeman failed to file a grievance concerning the event until August 8, 2014—well after the allotted fifteen-day deadline. Therefore, even if the second grievance can be construed to related to Freeman's claims against Cartledge, Freeman did not property exhaust his administrative remedies. See Woodford, 548 U.S. at 81; see also South Carolina v. Blick, 481 S.E.2d 452, 455 (S.C. Ct. App. 1997) ("A court should be reluctant to overlook "[t]he adoption and execution of policies and practices necessary to preserve internal order and discipline, and to maintain institutional security in the prison[, areas which] are within the province and expertise of correctional officials."). Further, prison officials withdrew Freeman's second grievance at his request on September 23, 2014. Pl.'s Objections Ex. A at 9. Therefore, the second

grievance also cannot be construed as an attempt to exhaust his administrative remedies for his claims against Cartledge.

Freeman filed another grievance on September 26, 2014 ("third grievance"). In his third grievance, Freeman complains that he did not intend to withdraw his second grievance and again seeks to recover his legal files taken during the February 2, 2014 shakedown of his cell. Pl.'s Objections Ex A at 10. Again, the third grievance does not mention Cartledge, nor does it relate to any of his alleged missing items from his transfer to PCI. The third grievance also does not relate to Cartledge's alleged refusal to return Freeman's property. Thus, the third grievance also cannot be considered as an attempt to exhaust his administrative remedies for his claims against Cartledge as required under the PLRA.

To the extent that Freeman alleges that prison officials failed to follow established SCDC grievance procedures,[7] it is well settled that inmates have no federal constitutional right to have any inmate grievance system in operation at the place where they are incarcerated. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Furthermore, simply because a state or local authority chooses to establish an inmate grievance system, that choice does not confer any substantive constitutional right on the prison inmates. See id.; see also Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). Accordingly, even if corrections officials fail to properly apply an inmate grievance procedure, such failure is not actionable under 42 U.S.C. § 1983.

---

[7] Freeman alleges that his grievance went unprocessed because PCI officials claim he waived his August 8, 2014 grievance. Pl.'s Objections 9. Aside from the fact that Freeman's grievance was filed well after the allotted fifteen-day window, 42 U.S.C. § 1983 is not the proper vehicle to allege official noncompliance with SCDC grievance procedures. See Adams, 40 F.3d at 75.

Id.; see also Johnson v. Ozmint, 567 F. Supp. 2d 806, 823 (D.S.C. 2008) ("[T]o the extent Plaintiff's claim is that the Department of Corrections failed to follow its own policies and procedures . . . , this assertion also fails to set forth a claim of constitutional magnitude, as the failure of a prison official to follow prison procedures does not, standing alone, amount to a constitutional violation.").

In conclusion, because Freeman failed to properly exhaust his administrative remedies, the court adopts the R&R and summarily dismisses his complaint.

### B. Due Process

Additionally, even if the court were to find that Freeman properly exhausted his administrative remedies, his complaint would still be subject to dismissal. It is well settled that the "Due Process Clause is not implicated by a state official's negligent act causing unintended loss of or injury to life, liberty, or property." Daniels v. Williams, 474 U.S. 327, 328 (1986).[8] Thus, to the extent that Freeman alleges that Cartledge negligently deprived, or negligently allowed others to deprive, Freeman of his personal property, he fails to set forth a cognizable claim under 42 U.S.C. § 1983. See, e.g., DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 202 (1989) ("The Due Process Clause of the Fourteenth Amendment . . . does not transform every tort committed by a state actor into a constitutional violation.").

Furthermore, even if Freeman was subjected to an <u>intentional</u> deprivation of his personal property by Cartledge or other jail officials, Freeman still nonetheless fails to allege a due process violation. "If negligent deprivations of property do not violate the

---

[8]The Due Process Clause was intended to secure an individual from an abuse of power by government officials. Daniels, 474 U.S. at 331. "Far from an abuse of power, lack of due care . . . suggests no more than a failure to measure up to the conduct of a reasonable person." Id. at 332. To hold that such an injury caused by such negligent conduct is a deprivation within the meaning of the Due Process Clause would trivialize the centuries-old principle of due process of law. Id.

Due Process Clause because pre-deprivation process is impracticable, it follows that intentional deprivations do not violate that Clause provided, of course, that adequate state post-deprivation remedies are available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Accordingly, an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available. Id. Here, Freeman could have instituted a civil action in state court to recover his personal property under S.C. Code Ann. § 15-69-10 et seq. Therefore, state law affords Freeman an adequate post-deprivation remedy to satisfy due process requirements.

Freeman fails to allege a violation of the Due Process Clause and, as such, his § 1983 action cannot be sustained on these grounds.

### IV.  CONCLUSION

Based on the foregoing, the magistrate's R&R is **AFFIRMED**, and Freeman's Complaint is **DISMISSED** without prejudice and without service of process.

**AND IT IS SO ORDERED.**

DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

**June 30, 2015**
**Charleston, South Carolina**